**David John FRANCIS, Appellant,**

v.

**FARMERS CASUALTY CO. (MUTUAL), Appellee.**

No. 66582.

Supreme Court of Iowa.

May 19, 1982.

H. Alan Bowers of Baird, Bowers, Oliver & Olson, Des Moines, for appellant.

Roy M. Irish of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK, and ALLBEE, JJ.

HARRIS, Justice.

Plaintiff, at all material times, had a comprehensive family automobile insurance policy with defendant. He sold an automobile covered by the policy but, for want of a safety inspection certificate, the transfer of the ownership was not effected. *See Sullivan v. Skeie Pontiac, Inc.*, 270 N.W.2d 814, 818 (Iowa 1978). Accordingly, when the vehicle was later involved in an accident plaintiff was sued in a separate tort action. He brought this declaratory judgment suit seeking coverage for the accident under his policy. We think the trial court was right in declining relief.

When plaintiff sold the automobile, he was paid in full and surrendered it to the buyer. He signed a certificate of title and gave it, along with the registration certificate, to the buyer. Neither the plaintiff nor the buyer, however, ever obtained a safety inspection certificate demanded by section 321.238, The Code 1979. Plaintiff had no further contact with either the vehicle or buyer. It was the buyer who was driving the vehicle when it was involved in a collision with a motorcycle. Both riders of the motorcycle died as a result of the accident.

Plaintiff has been named as defendant in two wrongful death suits based on his retained ownership and responsibilities under section 321.493 which, under our holding in *Sullivan*, are claimed to flow from his failure to comply with section 321.238, The Code. The controlling question here is whether plaintiff is covered by the "nonowned automobile" provision of his policy. The provisions of the policy are:

To pay on behalf of the insured all sums which *the insured shall become legally obligated to pay as damages because of* :

A.   bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person;

. . . .

*arising out of the ownership, maintenance or use of the owned automobile or any nonowned automobile and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy . . . .* PERSONS INSURED . . . .

(b) with respect to a nonowned automobile,

    (1) the named insured
[DEFINITIONS Under Part I]:

"nonowned automobile" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile . . . .

(Emphasis added).

Plaintiff has two interrelated hurdles to clear. First, the vehicle in question must qualify as nonowned. Second, there must be a showing of the insured's infrequent and irregular use of the automobile. The second hurdle is a part of the definition of the first hurdle. The record here does not show the first hurdle was cleared and conclusively shows the second hurdle was not cleared.

 Plaintiff cannot show he is covered for the accident under the nonowned automobile provisions of the policy. The policy's own definition of the term "nonowned automobile" will control unless it is ambiguous. Iowa R.App.P. 14(f)(14). And ". . . the mere fact that parties disagree on the meaning of a phrase does not establish ambiguity for purposes of this rule. [Authority.] The test is an objective one: Is the language *fairly* susceptible to two interpretations? [Authority.]" *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981), (emphasis in original).

We look to the policy, not the statute, for the definition. *Allstate Insurance Company v. Chinn*, 271 Cal.App.2d 274, 76 Cal. Rptr. 264, 266 (Cal.App.1969). The question is not the one we answered in *Sullivan v. Skeie Pontiac, supra* : did plaintiff still hold ownership responsibilities for the vehicle after the ineffective sale? The question here is whether the vehicle, by reason of its ownership retention under *Sullivan*, became a "nonowned automobile" under the policy. We are convinced it did not. Such a result was not the intention, and could not have been a reasonable expectation, of the parties:

> The purpose of a nonownership clause, such as the one in question, is to provide the insured with coverage while the insured is engaged in the occasional or infrequent use of an automobile other than the one specified in the policy, but not to

provide liability coverage in regard to unspecified automobiles which are furnished or available for the insured's frequent or regular use. [Authorities.]

*Waggoner v. Wilson*, 31 Colo.App. 518, 521– 22, 507 P.2d 482, 484 (1972).

The record conclusively shows plaintiff's failure at the second hurdle. After its sale the vehicle was in no way furnished for infrequent or irregular use to the plaintiff. He had nothing to do with the automobile, never drove it, presumably never saw it.

This is a risk which the defendant never undertook under the policy. The trial court was right in so holding.

AFFIRMED.